Eastern District of Kentucky
F I L E D
MAY 1 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-204-GWU

DEBORAH BLACKSTONE,            PLAINTIFF,

VS:            MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT,

## INTRODUCTION

Deborah Blackstone originally brought Blackstone v. Barnhart, London Civ. A. No. 02-322 (E.D. Ky) to obtain judicial review of an unfavorable administrative decision on her applications for Disability Insurance Benefits and for Supplemental Security Income. After a period of administrative reconsideration prompted by the Court's Memorandum Opinion, Order, and Judgment of August 6, 2003 (Tr. 598-606), it is again before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

     1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

     2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

     3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability

1

to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

2

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to

3

properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b),

4

416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Blackstone, a 46 year-old former Walmart department store manager and insurance claims representative with a high school education, suffered from impairments related to a history of carpal tunnel syndrome, a history of treatment for muscle spasm/ligament sprains/strains, a history of migraine headaches, recurrent sinusitis, degenerative joint disease, anxiety, and depression. (Tr. 558-559). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work. (Tr. 568-569). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 569). The ALJ based this

decision, in part, upon the testimony of a vocational expert. (Tr. 567-568).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert James Miller included an exertional limitation to medium level work along with such non-exertional restrictions as (1) an inability to more than occasionally climb, bend, crouch, or crawl; (2) a need to avoid exposure to hazards; (3) a "limited but satisfactory" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, function independently, maintain attention and concentration, understand, remember and carry out complex instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability; and (4) an inability to use her hands for gripping and fine manipulation more than occasionally. (Tr. 690-691). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 692). The ALJ then presented an alternative question involving a "seriously limited but not precluded" ability to deal with the public and work stresses. (Tr. 692). The witness indicated that several of the previously-cited jobs would be eliminated (Tr. 693) but later noted additional jobs which could be performed (Tr. 694). Therefore, assuming that the vocational factors considered by Miller fairly depicted the plaintiff's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

This action was previously remanded to the Commissioner for further consideration because the ALJ erred in failing to address the reasons why controlling weight was not assigned to the opinion of Psychologist Dennis Spjut,

6

a treating source. (Tr. 604). Spjut indicated in a July, 2001 letter that Blackstone would not be capable of maintaining schedules, attendance, or sustaining a regular work routine in a competitive labor situation." (Tr. 386-387). Following the remand, the psychologist, in a December, 2003 letter, made the same comment indicating that this was due to her problems with anxiety. (Tr. 619). In the current denial decision, the ALJ again rejected Spjut's opinion as binding. (Tr. 563). However, sufficient reasons were cited at this time. Among the ALJ's reasons were Spjut's failure to include the treatment notes detailing a long-standing problem with severe anxiety, his statements that her condition was improving and that medication helped control her symptoms, the plaintiff's contemporaneous, contradictory statements to consultant Vincent Dummer concerning her ability to get along with supervisors and co-workers, and the treatment records from Cornerstone Counseling, another treating source, indicating strong improvement in the claimant's condition. (Tr. 562-563). Thus, Spjut's opinion was properly rejected by the ALJ following the remand.

The mental factors of the hypothetical question were compatible with the limitations indicated by Psychologists Mary Allen-Genthner (Tr. 284) and Gary Maryman (Tr. 664-665), each an examining consultant. The treatment records from Cornerstone Counseling did not identify more severe mental restrictions than those found by the ALJ and indicate that improvement occurred in the plaintiff's condition before her case was terminated. (Tr. 388-421). These reports provide substantial evidence to support the administrative decision.

The Court notes that Psychologist Vincent Dummer, another examiner, did indicate that the plaintiff would have a "seriously limited but not precluded" ability to interact with supervisors, a restriction not presented to Miller or found by the current ALJ. (Tr. 473). This opinion would be offset by those of Maryman

7

and Allen-Genthner.  Furthermore, this limitation was presented in an earlier hearing to vocational expert William Ellis along with a number of more limiting physical restrictions than found by the current ALJ. (Tr. 543-544).  A significant number of jobs would still be available. (Tr. 544-545).  Therefore, substantial evidence supports the ALJ's findings with regard to Blackstone's mental condition.

The ALJ also dealt properly with the evidence of record relating to Blackstone's physical condition.  Dr. Marcie Tamblyn, an examining consultant, found "no physical evidence for impairment in ability to reach, sit, stand, walk, stoop, lift, handle, carry objects, travel, hear or speak." (Tr. 262).  The only restriction indicted by the staff at Beloit Memorial Hospital (Tr. 194) as well as by Dr. Randall Willis (Tr. 275), each a treating source, was a need to quit smoking. The physical factors of the hypothetical question were fully consistent with these opinions.  Such treating and examining sources as the staff at Northwestern Memorial Hospital (Tr. 160-190), Dr. Thomas Stout (Tr. 250-256, 278-279), Dr. Ronald Dubin (Tr. 257-258), the staff at the Convenience Care Center (Tr. 372-384, 422-464), the staff at the Tri-State Medical Clinic (Tr. 620-634), and Dr. Jai Devapiran (Tr. 635-652, 669-671) did not identify more severe physical limitations than those found by the ALJ.  These reports provide substantial evidence to support the administrative decision.

The Court notes that Dr. Jules Barefoot (Tr. 482) and Dr. Gary Koenigsmark (Tr. 657), each an examining consultant, identified more severe restrictions with regard to standing and walking than were found by the current ALJ.  These restrictions were offset by the opinion of the equally-placed Dr. Tamblyn. The Court notes that each physician specifically reported in the text of their reports that the plaintiff was not impaired with regard to standing. (Tr. 480,

656). Finally, the earlier hypothetical question presented to Ellis at an earlier hearing did essentially include all of the restrictions identified by these physicians and a significant number of jobs were indicated as being available. (Tr. 543-545). Therefore, these reports do not support the plaintiff's claim.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the ___10___ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE